

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| APC FILTRATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07 C 1462 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| WILLIAM A BECKER and | ) | Magistrate Judge |
| SOURCEONE PLUS, INC., | ) | Martin C. Ashman |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, APC Filtration ("APC"), moves this Court to impose sanctions against Defendants, William A. Becker ("Becker") and SourceOne Plus, Inc., ("SourceOne"), pursuant to Rule 37 of the Federal Rules of Civil Procedure. This case was referred to the Court by Judge Gettleman for the purpose of discovery supervision pursuant to Local Rule 72.1. Under the referral, the Court has the power to decide this motion, which arises out of Defendants' alleged failure to comply with the rules governing discovery. Because both parties declined the Court's offer to hold an evidentiary hearing, the Court decides this motion on the papers and the arguments of counsel on September 19, 2007. For the reasons discussed below, the Court grants Plaintiff's motion for sanctions in part, and denies it in part.

### I. Background

APC is a Canadian corporation incorporated in the province of Ontario. (Compl. ¶ 1.) APC's business is the engineering and manufacturing of filters and bags for various types of

industrial, commercial, and domestic vacuum cleaners. (Id. ¶ 8.) The Upper Midwest region of the United States is one of APC's primary markets. (Id. ¶ 9.) Becker was employed by APC from January 2002 until January 2007. (Compl. ¶¶ 19-20; Pl.'s Mot. at 2.) At the time his employment with APC ended, Becker was APC's National Sales Manager. (Compl. ¶ 21.) Becker is now President of SourceOne, an Illinois corporation that competes in the same product market as APC. (Compl. ¶ 44.)

APC instituted this lawsuit on March 15, 2007. APC alleges that Becker used and continues to use proprietary information and contacts obtained during his employment with APC to enable his company, SourceOne, to compete with APC. APC seeks damages and injunctive relief, alleging that this conduct constitutes a misappropriation of APC's trade secrets as well as a violation of Becker's employment contracts with APC. Of particular relevance to this motion are APC's allegations that Becker stole one of APC's supplier's, the Tongxiang Zehua Paper Company ("Zehua"); that he diverted a major potential client, AmSan, from APC to SourceOne; and that he has competed with APC using proprietary information such as customer and pricing data. (Compl. ¶¶ 43-58, 68-87.)

On April 27, 2007, APC served Becker and SourceOne with discovery requests seeking, *inter alia*, all written communications with Zehua and AmSan as well as all of Becker and SourceOne's price lists, customer lists, and business records. (Pl.'s Mot. at 3-4.) Becker and SourceOne initially responded by acknowledging that there had been some communications between Becker and Zehua and AmSan, but stating that they "no longer possess[ed]" these communications. (Defs.' Resp. to Pl.'s Interrog. No. 5.) The same answer was given with respect to pricing information. (Id. at No. 23.) Counsel for Becker and SourceOne subsequently

disclosed in an e-mail that Becker's personal computer had "crashed" and that any communications with AmSan and Zehua using that computer were irretrievably lost. (Pl.'s Mot., Ex. 3.)

On June 11, 2007, APC filed a motion to compel before Judge Gettleman, which was subsequently transferred to this Court pursuant to Judge Gettleman's referral for discovery supervision. This Court granted APC's motion and ordered Becker and SourceOne to produce a sworn statement detailing what precisely had happened to Becker's computer by July 10, 2007. (June 28, 2007, Tr. at 19.) Pursuant to that order, Becker submitted an affidavit stating that he had experienced computer problems on March 21, 2007, and that he had brought his computer to a repair shop where he was told that "the 'mother board' and 'hard drive' were shot, and that the computer was not worth fixing." (Becker Aff. ¶ 3.) Acting on this information, Becker stated that he "brought the old computer back home and put it with a bunch of other junk that [he] was throwing away. The old computer was thrown away with [Becker's] other junk." (Id.) However, in his July 24, 2007, deposition, Becker testified that he took the computer to a construction site in McHenry, Illinois, and disposed of it in a Dumpster. (Becker Dep., pp. 274-75.) At oral argument, the parties agreed that the site where Becker disposed of the computer is approximately 20 miles away from his home.

On July 17, 2007, APC filed the instant motion, seeking sanctions and attorneys' fees pursuant to Federal Rule of Civil Procedure 37, arguing that Becker and SourceOne destroyed evidence relevant to APC's claims.[1] APC seeks an order: requiring compensation for all

---

[1] At oral argument, APC also argued that Becker and SourceOne's responses to APC's requests to admit are an alternative basis for sanctions because they were later contradicted by
(continued...)

expenses and attorneys' fees associated with APC's attempts to obtain the missing documents; deeming certain facts to be conclusively established; "making certain adverse factual findings to be submitted by APC"; and granting default judgment to APC on Counts III ("Breach of Fiduciary Duty") and IV ("Trade Secrets") of its complaint. (Pl.'s Mot. at 12.)

## II. Discussion

### A. Sanctions

#### 1. Legal Standard

The Court has inherent power to impose sanctions where necessary to prevent abuses of the judicial process and promote the efficient administration of justice. *Barnhill v. U.S.*, 11 F.3d 1360, 1367 (7th Cir. 1993). This power includes the power to sanction parties for failure to preserve potential evidence that is properly discoverable. *Wiginton v. Ellis*, No. 02 C 6832, 2003 WL 22439865 at *3 n. 5, 4 (N.D. Ill. Oct 27, 2003). Parties to a lawsuit have a duty to preserve admissible evidence as well as evidence that is discoverable because it is "reasonably calculated to lead to the discovery of admissible evidence." *Id.* at *4; Fed. R. Civ. P. 26(b)(1). Furthermore, the duty to preserve extends to "evidence that [the party] has notice is reasonably likely to be the subject of a discovery request." *Wiginton*, 2003 WL 22439865 at *4. In this context, "notice" need not take the form of a formal discovery request: "the complaint itself may

---

[1](...continued)
other evidence. Federal Rule of Civil Procedure 37(c)(2) provides for sanctions "[i]f a party fails to admit . . . the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves . . . the truth of the matter." Therefore, the proper time for APC to move for sanctions based on Becker and SourceOne's responses to APC's requests to admit will come only after the finder of fact determines the truth of the matter. Because this has not occurred (and is not certain to occur) the Court does not impose sanctions on this basis.

also alert a party that certain information is relevant and likely to be sought in discovery." *Cohn v. Taco Bell Corp.*, No. 92 C 5852, 1995 WL 519968 at *5 (N.D. Ill. Aug. 30, 1995).

In addition to this inherent power, the Court has authority under Federal Rule of Civil Procedure 37(b)(2) to impose sanctions on a party that "fails to obey an order to provide or permit discovery." This power differs from the Court's inherent power in that it only arises once the Court has issued a discovery order. *See Wiginton*, 2003 WL 22439865 at *3 n. 5. In all other respects, however, "the analysis is essentially the same under either alternative." *Id.* In either case, the Court's choice of sanction is discretionary. *Langley v. Union Electric Co.*, 107 F.3d 510, 513 (7th Cir. 1997); *Barnhill*, 11 F.3d at 1367. The guiding principle is that "[a]n award of sanctions must be proportionate to the circumstances surrounding the failure to comply with discovery." *Langley*, 107 F.3d at 515 (internal quotations and citations omitted).

### 2. Duty to Preserve the Computer

As discussed above, the prerequisite to the imposition of sanctions pursuant to the Court's inherent power is the existence of a duty to preserve the computer as evidence. In order for this duty to exist, the computer and its contents must have been discoverable under Rule 26 and Becker and SourceOne must have had reasonable notice that the computer or its contents could be the subject of future discovery requests. In this case, both conditions are met.

Under the liberal standard of discovery relevance, material is discoverable if it is admissible or "reasonably calculated to lead to admissible evidence." Fed. R. Civ. P. 26(b)(1). In this case, the allegations that support APC's claims center on Becker's conduct in communicating with various suppliers and customers within the vacuum filter and bag industry

as well as his alleged misappropriation of proprietary information that was stored in computerized form. Becker stated in his affidavit that he used the computer for both business and personal reasons. (Becker Aff. ¶ 4.) Given the nature of the allegations and Becker's use of the computer for business purposes, the contents of the computer were clearly discoverable.

Furthermore, Becker and SourceOne had reasonable notice that the computer could become the subject of discovery requests at the time that Becker threw the computer away. APC's complaint was filed on March 15, 2007, and counsel for Defendants made his initial appearance on March 19, 2007. Becker admits to throwing the computer away sometime after March 21, 2007. As discussed above, notice of a complaint can put a litigant on notice that evidence is likely to be requested, triggering the duty to preserve. *Cohn*, 1995 WL 519968 at *5. In this case, Becker had notice based on the nature of APC's allegations that the computer could become part of the discovery process. Because the computer's contents were discoverable and Becker had reasonable notice that the computer could become the subject of a discovery request, Becker had a duty to preserve the computer as evidence prior to the date on which he discarded it. Therefore, this Court may impose sanctions pursuant to its inherent power.

### 3. Duty to Produce the Computer's Contents

Rule 37(b)(2) sanctions are appropriate only where a party fails to obey a court order to produce evidence or permit discovery. Fed. R. Civ. P. 37(b)(2); *Wiginton*, 2003 WL 22439865 at *3 n. 5. On June 28, 2007, this Court granted a motion to compel by APC and ordered Becker and SourceOne to answer all outstanding discovery by July 10, 2007. (Minute Order, June 28, 2007.) Among the discovery requests that the Court ordered Becker and SourceOne to comply

with were requests for the production of documents relating to communications between Becker, AmSan, and Zehua, as well as documents relating to SourceOne's price lists.

Becker and SourceOne failed to comply with this order to produce documents because Becker had earlier discarded the computer. Becker and SourceOne's own answers to APC's interrogatories indicate that Becker communicated by e-mail with Zehua but that "[t]he dates and times of these e-mail exchanges are unknown" because "Becker no longer is in possession of the e-mails." (Defs.' Answer to Pl.'s Interrog. No. 5.) Becker and SourceOne provided a similar answer with respect to Becker's communications with AmSan. (Defs.' Answer to Pl.'s Interrog. No. 15.) It is now clear that there must have been some communications between Becker, Zehua, and AmSan during Becker's period of employment with APC because, as the parties agreed at oral argument, Becker and SourceOne had established contractual relationships with both of these companies prior to his termination in January 2007. Furthermore, the parties now agree that AmSan has responded to a subpoena by producing over 300 pages of e-mail correspondence, containing approximately 60 messages. Whether these represent the entirety of Becker's communications in furtherance of his plan to compete with APC or merely the tip of the iceberg is impossible to tell, since the computer no longer exists. This is precisely the situation that the rules governing discovery are intended to prevent.

The Court specifically finds, in light of what Becker did (traveling 20 miles to dispose of the computer in a construction site Dumpster) and when he did it (within days of receiving notice of APC's lawsuit), that Becker acted in bad faith in order to prevent APC from discovering potentially damaging evidence. *See Langley*, 107 F.3d at 514 (Rule 37 sanctions may only be imposed where a party displays willfulness, bad faith, or fault). Although this conduct occurred

prior to the Court's order, it is enough that Becker's culpable conduct "eventually culminated in the violation." *Id.* (quoting *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992)). Therefore, because Becker acted in bad faith and violated a discovery order issued by this Court, Becker and SourceOne are subject to sanctions under Rule 37(b).

Because Becker had a duty to preserve the computer as evidence at the time that he destroyed it, and because the destruction of the computer was bad-faith conduct that culminated in a violation of this Court's order of June 28th, 2007, Becker and SourceOne are subject to sanctions pursuant to both the inherent power of the Court and the provisions of Federal Rule of Civil Procedure 37.

### 4. Sanctions

As discussed above, the Court has discretion in its choice of sanctions and is guided by the principle that the sanctions imposed must be proportional to the circumstances of the case at hand. *See Langley*, 107 F.3d at 515; *Barnhill*, 11 F.3d at 1367-68. Consequently, in determining the proper sanctions, the Court considers the prejudice to APC, the prejudice to the judicial system, the need to punish Becker and SourceOne, and the need to deter similar conduct in the future. *See Krumwiede v. Brighton Assoc., L.L.C.*, No. 05 C 3003, 2006 WL 1308629 at *11 (N.D. Ill. May 8, 2006).

Default judgment, the most extreme sanction sought by APC, is inappropriate here. This Court has held previously that "[a] default judgment is a harsh sanction that should only be employed . . . where there is clear and convincing evidence of willfulness, bad faith or fault" by the party against whom sanctions are sought. *Krumwiede*, 2006 WL 1308629 at *9 (citing

*Maynard v. Nygren*, 332 F.3d 462, 468 (7th Cir. 2003)). Another relevant consideration in deciding whether to grant default judgment is whether there has been severe, incurable prejudice to the party seeking sanctions. *Krumwiede*, 2006 WL 1308629 at *11.

In this case, the Court finds specifically that Becker acted in bad faith when he destroyed the computer and any evidence that it may have contained. However, the Court finds that APC's claims have not been severely and incurably prejudiced as a result of Becker's conduct. The parties agreed at oral argument that many of the documents that APC sought from Becker's computer have since been provided by third parties. Therefore, the absence of the computer has not placed APC in a position where it is incapable of proving its claims. At oral argument, counsel for APC maintained that APC suffered additional prejudice because, but for Becker's destruction of evidence, APC would have won a temporary injunction. This claim is too speculative to be given much weight in deciding whether default judgment is an appropriate sanction. Because the prejudice to APC has been partially mitigated, the Court finds that the drastic sanction of default judgment is not warranted. Therefore, APC's request for default judgment on Counts III and IV of its complaint is denied.

While the extreme sanction of default judgment may not be warranted, the Court finds that lesser sanctions are appropriate. The Court finds that Becker knew of the allegations in APC's complaint and had reasonable notice that the computer and its contents could be subject to discovery. He had a duty to preserve the computer and he violated that duty when he discarded the computer on March 21, 2007, or shortly thereafter. Becker's bad-faith conduct eventually resulted in Becker and SourceOne's failure to comply with this Court's order of June 28, 2007. It

has prejudiced APC's ability to prove its allegations regarding Becker's communications with Zehua and AmSan. Finally, it has imposed additional costs and attorney's fees on APC.

With respect to APC's claim that Becker misappropriated confidential information, the prejudicial impact of Becker's conduct is less clear. First, APC's President, Russell Kelly, has given deposition testimony suggesting that Becker may not have had direct access to APC's proprietary information using the destroyed computer. (Kelly Dep., pp. 49-52.) Kelly also testified that if Becker had e-mailed the information to the destroyed computer, the e-mail would have gone through APC's server. (Kelly Dep., pp. 49-51.) These facts suggest that if there were proprietary files on Becker's computer, APC would have had an e-mail record on its own server.

It is also significant that the contents of Becker's computer are not crucial to APC's ability to prove its claim. If Becker and SourceOne used proprietary information such as price lists, this can be proven circumstantially by evidence that SourceOne's price lists were identical to APC's, as APC alleges in its complaint. (Compl. ¶ 49.) Furthermore, as the Court suggested at oral argument, Becker could have manually transcribed proprietary information and used it to compete with APC without ever entering it directly into his personal computer or labeling it as such. Therefore, in assessing the extent of the harm to APC resulting from Becker's conduct, the Court finds that APC's claims regarding communications with Zehua and AmSan have been seriously prejudiced by Becker's conduct, while the prejudice to the trade secret misappropriation claim is less significant.

Taking into account the nature of Becker's conduct and the extent of its prejudicial effect on APC, the Court finds that the following sanctions are warranted:

1. It is deemed conclusively proven that Becker communicated electronically and in person with Zehua in order to induce Zehua to enter an exclusive supply agreement with SourceOne. These communications took place at least as early as May 2006, since Defendants have admitted to having contact with Zehua beginning in May 2006. (*See* Defs.' Resp. to Pl.'s Interrog. No. 4.) Because Becker was employed by APC from January 2002 through January 2007, these communications took place while Becker was employed by APC.

2. It is deemed conclusively proven that Becker communicated with AmSan at least as early as September 2006 in order to solicit AmSan's future business for SourceOne rather than APC. This date coincides both with Becker's return from his meeting with Zehua in China and the end of Becker's documentation of his contacts with AmSan in APC's database. (*See* Becker Dep. p. 108; Compl. Ex. G.) This conclusion is appropriate given that the next documented communication occurred on January 26, 2007, the day Becker and SourceOne won the AmSan contract. (Compl. Ex. J; Becker Dep. pp. 231-32.) Because Becker was employed by APC from January 2002 through January 2007, these communications took place while Becker was employed by APC.

3. Becker and SourceOne are hereby ordered to pay APC's reasonable attorneys' fees and costs associated with: a) filing and arguing this motion for sanctions; b) third-party discovery that was made necessary by Becker's destruction of the computer; and c) retaining computer expert Daniel P. Skalitzky to prepare the report dated September 6, 2007, and appended as Exhibit 1 to APC's Supplemental Brief in Support of Motion for Sanctions.

APC is given leave to file a petition detailing its fees and costs within thirty days.

### III. Conclusion

For the reasons stated above, the Court grants in part and denies in part APC's motion for sanctions against Becker and SourceOne.

**ENTER ORDER:**

_____
MARTIN C. ASHMAN
United States Magistrate Judge

Dated: October 12, 2007.

- 11 -

Copies have been mailed to:

| | |
|---|---|
| WILLIAM R. QUINLAN, Esq.<br>RICHARD C. BOLLOW, Esq.<br>JEANAH PARK, Esq.<br>Quinlan & Carroll, Ltd.<br>30 North LaSalle Street<br>Suite 2900<br>Chicago, IL 60602 | SHANNON D. McDONALD, Esq.<br>Carroll & McDonald, L.L.C.<br>2665 South Moorland Road<br>Suite 200<br>New Berlin, WI 53151<br><br>JEREMY J. GLENN, Esq.<br>NIKKI A. ODOM, Esq.<br>Meckler Bulger & Tilson, L.L.P.<br>123 North Wacker Drive<br>Suite 1800<br>Chicago, IL 60606 |
| Attorneys for Plaintiff | Attorneys for Defendants |