**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| APC FILTRATION, INC. <br><br> Plaintiff, <br><br> v. <br><br><br><br><br> WILLIAM A. BECKER and <br>SOURCEONE PLUS, INC., <br><br> Defendants. | Case No. 07 C 1462 <br><br> Honorable Robert M. Dow, Jr. <br><br> Magistrate Judge Martin C. Ashman |

**MOTION FOR RULE TO SHOW CAUSE**

Plaintiff APC Filtration, Inc. ("APC"), pursuant to Local Rule 37.1, hereby moves for an Order requiring Defendants William A. Becker "(Becker") and SourceOne Plus, Inc. ("SourceOne") to show cause as to why they should not be held in civil contempt of Court for violating the Court's October 23, 2007 and February 25, 2008 Orders. In support of its Motion, APC states:

**I.     INTRODUCTION**

On March 15, 2007, APC filed a Verified Complaint and Motion for Temporary Restraining Order ("TRO") against Defendants alleging that while Defendant Becker was employed as APC's National Sales Manager, he set up SourceOne as a rival company in direct competition with APC. Specifically, APC alleged that Becker improperly contacted APC customers, misappropriated APC's trade secrets, breached his fiduciary duties and tortiously interfered with a manufacturer's representative agreement between APC and former co-

defendant, Prime Line, Inc. The Honorable Judge Gettleman entered a TRO on March 15, but later dissolved it on March 20, based upon an affidavit filed by Becker. After months of discovery, APC learned, and Judge Gettleman determined, that this affidavit was false.

Through discovery, APC also learned that Becker had destroyed relevant evidence in the form of his desktop computer. APC filed a motion for sanctions before Magistrate Judge Ashman based on this revelation. APC also filed a motion for partial summary judgment and a motion for preliminary injunction before Judge Gettleman based upon the evidence it had uncovered through discovery.[1] In addition to finding that the affidavit Becker filed in response to APC's motion for TRO was false, Judge Gettleman found that Becker had destroyed relevant evidence to cover up the false statements in this affidavit.[2] Judges Gettleman and Ashman also specifically found that while he was still employed by APC, Becker had solicited at least one APC customer, AmSan and had entered into an exclusive supply contract with APC's former Chinese supplier, Zehua.

On October 23, 2007, Judge Gettleman granted APC's motion for preliminary injunction. (October 23, 2007 Order, D.E. 107 ("Preliminary Injunction")). Among other things, Judge Gettleman's order enjoined Defendants and their successors and assigns from:

> 1. Doing business with or soliciting, either directly or indirectly, any customers or known prospective customers of APC at the time Becker was employed by APC;
>
> 2. Using or allowing any other individual or entity to use, for any purpose, APC's trade secrets or any other confidential or proprietary information,

---

[1] APC's motion for partial summary judgment, in addition to Defendants' motion for summary judgment, have been fully briefed and are awaiting ruling.

[2] The specific details surrounding Becker's wrongful conduct are set forth in this Court's February 25, 2007 Order (D.E. 142), Judge Ashman's December 21, 2007 Order (D.E. 135), and Judge Ashman's October 12, 2007 Memorandum Opinion and Order (D.E. 101).

including but not limited to, customer lists and pricing information acquired by defendants; and

   3. Doing business with Zehua, including purchasing or otherwise receiving any products supplied by Zehua.

(Preliminary Injunction at 3, D.E. 107, attached hereto as Exhibit 1.)

On November 27, 2007, Defendants filed a motion to "limit" the preliminary injunction. (D.E. 115-2.) In their motion, Defendants argued that the Preliminary Injunction did not correctly reflect Judge Gettleman's ruling at the preliminary injunction hearing because it included APC's known prospective customers, as well as current customers. Defendants argued that every customer in the industry could be considered a known prospective customer of APC, and including them would "effectively eliminate[ ] Defendants' ability to conduct business in this industry." (*Id.* at 3.) Two days later, Judge Gettleman denied Defendants' motion, thereby reaffirming the intended broad scope of the Preliminary Injunction. (November 29, 2007 Order, D.E. 122.)

Since the entry of the October 23, 2007 Order, APC has obtained clear and convincing evidence that Defendants have breached and violated the Preliminary Injunction in several ways. As recently as February 2008, Defendants actively solicited at least one APC customers and sold to it – at lower prices – the same product offered by APC.[3] Defendants have also used an Internet-based distributor to indirectly sell to current or former APC customers and thereby circumvent the Preliminary Injunction. Finally, SourceOne's continued active sales and marketing of its Green-Klean products, which at the time the Preliminary Injunction was entered, were being supplied pursuant to an *exclusive* supply agreement with Chinese supplier Zehua,

---

[3] SourceOne's Green-Klean product line is in direct competition with APC's Janitized® product line.

3

raises a fair question as to whether Defendants are still purchasing products from Zehua, in violation of the Preliminary Injunction.

Defendants' activities are in willful contempt of the Court's orders, despite the dismay expressed by the Court with respect to Defendants' conduct in this litigation in at least three separate opinions. Since the entry of the Preliminary Injunction, APC has expended significant time and resources attempting to monitor Defendants' activities and determine whether they are soliciting and selling to other APC customers. Although APC has obtained undisputed evidence that Defendants are soliciting its customers, APC's ability to procure additional testimony and proof is hampered by its customers' reluctance to get involved in this litigation and by a lack of cooperation from former customers who are getting products more cheaply from Defendants. However, it should not be APC's responsibility to continually investigate Defendants' nationwide activities in an effort to prove that they are violating the Preliminary Injunction. Having established that Defendants are violating the Preliminary Injunction, the burden must shift to Defendants to explain to this Court who they are doing business with, and who is supplying them with the products they are selling.

APC brings this Motion because Defendants continue to inflict damage on APC by soliciting its customers and illegally competing with it, despite this Court's order enjoining them from doing so. Defendants must be held in civil contempt for willfully violating the Court's Preliminary Injunction. In addition, Defendants have failed to pay the sanctions award entered by Judge Ashman and affirmed by this Court in its February 25, 2008 Order. Accordingly, Defendants must be held in civil contempt for violating that Order as well.

4

II.   **ARGUMENT**

A.   **Defendants Are Acting in Direct Violation of the Court's October 23, 2007 Preliminary Injunction**

"Courts independently must be vested with power to impose . . . submission to their lawful mandates. . . ." *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 831 (1994) (internal quotations omitted). One of the most important powers exercised by the Court is the power to punish contempt of a Court order. *Autotech Technologies LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 744 (7th Cir. 2007); *see also Reebok Int'l, Ltd. v. McLaughlin*, 49 F.3d 1387, 1390 (9th Cir. 1995) ("District courts do, and must, have the authority to punish contemptuous violations of their orders."). The Court is vested with significant latitude to enforce its own decrees in a contempt proceeding, the purpose of which is to secure compliance with prior court orders. *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 459 (7th Cir. 1993).

A finding of civil contempt is warranted where, as here, it is clearly and convincingly established that: (i) a lawful order of reasonable specificity was entered by the Court; and (ii) the order was violated. *Grove Fresh Distrib., Inc. v. John LaBatt Ltd.*, 888 F. Supp. 1427, 1436 (N.D. Ill. 1995) A finding of willfulness is not a necessary element of a finding of civil contempt, but the presence of willfulness is relevant to fashioning the appropriate remedial relief. *Id.* at 1436 n.7; *Connolly v. J.T. Ventures*, 851 F.2d 930, 935 (7th Cir. 1988). Further, once a party has established a violation of the Court's order, the party is "entitled as of right to an order imposing a compensatory fine." *Motorola, Inc. v. Computer Displays, Int'l*, No. 82 C 1399, 1985 WL 2864, at * 5 (N.D. Ill. Sept. 17, 1985) (awarding plaintiff its lost profits and reasonable attorneys' fees for defendants' violation of a consent degree in patent infringement litigation).

Here, both factors have been met. There can be no dispute that Judge Gettleman's October 23, 2007 Preliminary Injunction is a lawful order of reasonable specificity. Based on

5

the evidence before him, and in light of Defendant Becker's conduct in prompting APC's motion for sanctions, Judge Gettleman specifically ordered that Defendants were enjoined from soliciting APC's customers and known prospective customers, using APC's confidential information, and engaging in any kind of business relationship with Zehua. Judge Gettleman reaffirmed the scope of that order when he denied Becker's motion to "limit" the preliminary injunction on November 29, 2007. Further, as set forth in greater detail below, Defendants' activities are in direct violation and contempt of this Court's order and authority.

      **1.**      **Defendants Are Directly and Indirectly Soliciting APC's Customers And Known Prospective Customers**

There is no dispute that Defendants have violated, and continue to violate, the October 23, 2007 Preliminary Injunction. First, Defendants are actively soliciting APC's customers, and are using APC's confidential price and customer contact information in doing so. Moreover, Defendants, who as of the date of entry of the Preliminary Injunction had an *exclusive* supply contract with Chinese supplier Zehua, continue to conduct business and, accordingly, must demonstrate that they are not continuing to purchase or receive products from Zehua.

After the entry of the Preliminary Injunction, Defendants have been selling, directly and indirectly, SourceOne's products to APC's customers, in willful and direct violation of the Court's Preliminary Injunction. As detailed in the attached affidavit of David R. Asplund, Becker solicited a customer of APC's, Asplund Supply, Inc. as recently as February 2008. (Attached as Ex. 2 is the Affidavit of David R. Asplund, with accompanying exhibits.) Asplund became an APC customer in 2005, and ordered aftermarket vacuum bags and filters from APC until approximately mid-2007.[4] (Ex. 2 at ¶ 4.) In approximately July 2007, Becker contacted

---

[4] There is no dispute that Becker, as APC's National Sales Manager, knew that Asplund was a customer of APC.

Asplund and solicited its business using specific information he learned about Asplund from APC, including Asplund's specific product needs and the prices paid by Asplund to other suppliers, including APC. (*Id.* at ¶ 6.) Asplund began purchasing most of its products from SourceOne. (*Id.*) As recently as February 11, 2008, Asplund purchased vacuum bags from SourceOne Plus. (*Id.* at ¶ 10 and attached SourceOne sales purchase orders.) At no point had Defendants ever informed Asplund that this Court had entered an order enjoining him from soliciting business from APC's customers, including Asplund. (*Id.* at ¶ 11.)

Further, Defendants, are promoting, marketing, offering to sell, and selling SourceOne's products to anyone willing to purchase it. This includes APC's current and known prospective customers. In an effort to circumvent the Preliminary Injunction, Defendants have been using Re-Nu Equipment, Inc. (www.renuinc.com), an Internet distributor, to indirectly sell SourceOne products to APC's customers and known prospective customers. True and correct copies of the relevant pages from Re-Nu's website describing and picturing SourceOne's Green-Klean products for sale, of which the Court can and should take judicial notice, are attached hereto as Exhibit 3. *See Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (taking judicial notice of National Personnel Records Center's website, which "provided essential corroboration"); *Laborer's Pension Fund v. Blackmore Sewer Constr. Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of content of Harris Bank's website).

By selling products to Re-Nu who, in turn sells them to APC's current and former customers at the same pricing SourceOne uses for direct sales, Defendants are selling Green-Klean products indirectly to APC's customers, including Lansing Sanitary and Supply, in violation of the Preliminary Injunction. (*See* Affidavit of Eric J. Titus at ¶¶ 8-9, attached as Ex. 4.) In addition to Lansing Sanitary and Supply, upon information and belief, SourceOne is

7

indirectly selling to at least one other APC customer, Arnold Sales, through the Re-Nu website. (*See* Ex. 4 at ¶ 6.) Defendants' use of Re-Nu to sell Green-Klean products indirectly to APC's customers is also a clear violation of the Preliminary Injunction. Defendants cannot be heard to say that they have no control over who Re-Nu resells Green-Klean products to, particularly because Judge Gettleman has already rejected a similar argument that it would be too difficult to identify APC's known prospective customers. When selling their products to wholesalers or distributors for resale, Defendants have an obligation to alert them that SourceOne is prohibited by Court order from selling indirectly to APC customers. In addition, the fact that Re Nu is reselling Green Klean products, using the same pricing that SourceOne uses for direct sales, raises a serious question about Re-Nu's role as middle man in Defendants' indirect sales to APC customers. Defendants are obligated to make every effort to be "reasonably diligent and energetic in attempting to accomplish what was ordered." *Anthony Marano Co. v. Stallone, Inc.*, No. 00 C 8019, 2002 WL 31875471, at *7 (N.D. Ill. Dec. 24, 2002). Here, far from being diligent, Defendants' activities have been in clear and willful disregard of the Preliminary Injunction.

**2. Defendants Must Explain Their Relationship With Zehua**

In September 2006, while Becker was still employed by APC as its National Sales Manager, he traveled to China and negotiated and executed an exclusive supply contract with APC's former supplier Zehua. The Zehua Agreement contained the following provisions:

> [Zehua] expressly agrees that the engagement of SourceOne Plus hereunder, either as its Agent or as its Distributor, is exclusive and [Zehua] shall not, during the term of this Agreement, sell the Products in [the United States and Canada] either by itself or through another agent or a distributor.
>
> * * *
>
> SourceOne Plus agrees that during the term of this Agreement, it shall not sell, on behalf of any other company, any products that are similar to the Products within [the United States and Canada], unless [Zehua] is unable or does not make the

8

products. SourceOne Plus shall not conduct business with [Zehua] under any other business name or trade name or in any other capacity other than as SourceOne Plus.

(Zehua Agreement at § 1(d), p. 2.) (A true and correct copy of the Zehua Agreement is attached hereto as Ex. 5.) The Zehua Agreement was effective for eight (8) years. (Zehua Agreement, Ex. 5 at § 7, p. 7.)

The Preliminary Injunction expressly prohibited Defendants from "[d]oing business with Zehua, including purchasing or otherwise receiving any products supplied by Zehua." (Ex. 1 at 3.) However, the products offered on Re-Nu's website, and those sold by SourceOne to Asplund, are the same products supplied under the Zehua Agreement. Given the exclusive nature of SourceOne's agreement with Zehua, APC has raised more than a fair question that SourceOne has continued to do business with Zehua and has sold and is selling products supplied by Zehua, in violation of the Preliminary Injunction. Accordingly, Defendants should be required to demonstrate that they are not violating the Injunction in this additional way.

### B. Defendants Are Also In Direct Violation of the Court's February 25, 2008 Order

On February 25, 2008, this Court entered a Memorandum Opinion and Order ("Opinion") upholding Magistrate Judge Ashman's October 13 and December 21, 2007 $99,462.40 sanctions award against Defendants. These Orders were based upon Defendant Becker's willful destruction of relevant evidence and his conduct in misrepresenting his actions. (Opinion at 3, D.E. 142.) In its Opinion, the Court ordered Defendants to comply with the monetary sanctions award by March 3, 2008. (*Id.* at 5.) Defendants have failed to do so.

Defendants failed to comply with the Court's Order. Counsel for APC attempted to reach an agreement regarding the payment of the sanctions award with Defendants' counsel, but the parties were unable to reach an agreement. Defendants made a $50,000 payment to APC on

9

March 24, 2008. However, Defendants have failed to pay $49,462.40 balance of the sanctions award, and are in violation of the Court's February 25 Order. Accordingly, APC respectfully requests that the Court enter an order (1) finding Defendants in civil contempt of that order, (2) requiring them to immediately pay to APC the $49,462.40 balance of the sanctions award; and (3) transforming the sanctions award into an enforceable judgment against Defendants and in favor of APC in the amount of $49,462.40.

### III. CONCLUSION

As set forth above, Defendants are in violation of the Court's October 23, 2007 Preliminary Injunction. Defendants' activities are willful, and in direct contempt of this Court's authority and jurisdiction. Further, Defendants have failed to pay the full amount of this Court's sanctions award and, accordingly, are also in violation of the Court's February 25, 2008 order.

WHEREFORE, Plaintiff APC Filtration, Inc. respectfully requests that the Court:

A. Find Defendants William A. Becker and SourceOne Plus, Inc, in civil contempt of the October 23, 2007 and February 25, 2008 Orders ;

B. Order an immediate accounting of all products sold by SourceOne since October 23, 2007, including production of purchase orders, accounts receivable, bank deposits and shipping and warehouse records;

C. Order an immediate accounting of any products purchased from or received from Chinese supplier Zehua since October 23, 2007, including production of shipping and warehouse records;

D. Fine Defendants in an amount appropriate to ensure future compliance of the October 23, 2007 Preliminary Injunction;

E. Require Defendants to immediately pay the balance owed on the Court's February 25, 2008 order affirming Judge Ashman's $99,462.40 sanctions award;

10

      F.     Enter a judgment against Defendants and in favor of APC for the $49,462.40 balance of the sanctions award; and

      G.     Award Plaintiff APC Filtration, Inc. any further and additional relief, including attorneys' fees and costs, as is just and appropriate.

      Respectfully submitted,

      PLAINTIFF APC FILTRATION, INC.

      By: /s/ Richard C. Bollow
           One of Its Attorneys

Richard C. Bollow (No. 0248177)
Jeanah Park (No. 6278193)
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601-1003
Telephone: 312.609.7500
Facsimile: 312.609.5005

Date: March 31, 2008

## **CERTIFICATE OF SERVICE**

The undersigned certifies that true and correct copies of the foregoing **Motion for Rule to Show Cause** was served on:

Shannon D McDonald
Carroll & McDonald LLC
2665 S. Moorland Road
Suite 200
New Berlin, WI 53151
262-641-0071

by using the CM/ECF system which will send electronic notification of such filing to the above.

s/ Richard C. Bollow

Richard C. Bollow

12