# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

APC FILTRATION, INC.,

        Plaintiff,

v.

        Case No. 07 C 1462

        Honorable Robert M. Dow, Jr.

        Magistrate Judge Martin C. Ashman

WILLIAM A. BECKER and
SOURCEONE PLUS, INC.,

        Defendants.

## PLAINTIFF APC FILTRATION, INC.'S SECOND MOTION FOR RULE TO SHOW CAUSE

Plaintiff APC Filtration, Inc. ("APC"), pursuant to Local Rule 37.1, hereby moves for an Order requiring Defendants William A. Becker "(Becker") and SourceOne Plus, Inc. ("SourceOne") to show cause as to why they should not be held in civil contempt of court for violating the Court's October 23, 2007 Order. In support of this Motion, APC states:

## I.    INTRODUCTION

This is APC's second motion for rule to show cause filed in this matter.[1] APC does not bring this second motion lightly, nor does it wish to burden this Court with additional matters, particularly because the Court has not yet ruled on APC's first motion. However, APC is forced to bring this latest violation to the Court's attention because, despite the fact that APC's first

---

[1] APC filed its first Motion for Rule to Show Cause on March 31, 2008. The Court ordered a briefing schedule which was completed on April 23, 2008.

motion for rule to show cause is before this Court and awaiting ruling, Defendants have been undeterred and are continuing to freely solicit APC customers and do business with them as if no Preliminary Injunction had been entered.

The Preliminary Injunction entered by this Court could not be more clear. The Court expressly held that Defendants are enjoined from "[d]oing business with or soliciting, either directly or indirectly, any customer or known prospective customers of APC at the time Becker was employed by APC." (Preliminary Injunction at 3, D.E. 107.) APC filed a motion for rule to show cause on March 31, 2008 based upon Defendants' clear violations of the Preliminary Injunction in directly and indirectly selling SourceOne's Green-Klean product to APC customers. (D.E. 150, 154.)

Since the time APC's prior motion for rule to show cause was filed and fully briefed, however, APC has learned that Defendants are violating the October 23, 2007 Preliminary Injunction in yet another way. Specifically, SourceOne is selling its Green-Klean products to ProLink, Inc. ("ProLink"), a large-volume purchaser of janitorial and sanitation products. ProLink is a nationwide buying group owned by its members, who are distributors of janitorial and sanitation products. (Affidavit of Athanasia "Tammy" Kelly ("Kelly Aff."), attached hereto as Exhibit 1, at ¶ 5.) Many of ProLink's more than 80 member distributors are current and former customers of APC. (*Id.*) Thus, by selling Green Klean products to ProLink, Defendants are violating the Preliminary Injunction in two ways: first, ProLink is a known prospective customer of APC at the time Becker was APC's National Sales Manager and, second, many of the distributors for whom ProLink is buying such products are themselves current or former APC customers or known prospective customers.

2

By so doing, Defendants continue to act in willful disregard of this Court's authority. Accordingly, APC brings this second motion and respectfully requests that this Court enter an order requiring Defendants to show cause as to why they should not be held in contempt of the Court's Preliminary Injunction, for the additional reasons set forth herein.

## II.    ARGUMENT

### A.    Defendants Are Again Acting in Direct Violation of the Court's October 23, 2007 Preliminary Injunction

"Courts independently must be vested with power to impose . . . submission to their lawful mandates . . . ." *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 831 (1994) (internal quotations omitted). One of the most important powers exercised by the Court is the power to punish contempt of a Court order. *Autotech Technologies LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 744 (7th Cir. 2007); *see also Reebok Int'l, Ltd. v. McLaughlin*, 49 F.3d 1387, 1390 (9th Cir. 1995) ("District courts do, and must, have the authority to punish contemptuous violations of their orders."). The Court is vested with significant latitude to enforce its own decrees in a contempt proceeding, the purpose of which is to secure compliance with prior court orders. *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 459 (7th Cir. 1993).

A finding of civil contempt is warranted where, as here, it is clearly and convincingly established that: (i) a lawful order of reasonable specificity was entered by the Court; and (ii) the order was violated. *Grove Fresh Distrib., Inc. v. John LaBatt Ltd.*, 888 F. Supp. 1427, 1436 (N.D. Ill. 1995). A finding of willfulness is not a necessary element of a finding of civil contempt, but the presence of willfulness is relevant to fashioning the appropriate remedial relief. *Id.* at 1436 n.7; *Connolly v. J.T. Ventures*, 851 F.2d 930, 935 (7th Cir. 1988). Further, once a party has established a violation of the Court's order, the party is "entitled as of right to an order imposing a compensatory fine." *Motorola, Inc. v. Computer Displays, Int'l*, No. 82 C 1399,

1985 WL 2864, at * 5 (N.D. Ill. Sept. 17, 1985) (awarding plaintiff its lost profits and reasonable attorneys' fees for defendants' violation of a consent decree in patent infringement litigation).

Here, again, both factors have been met. There can be no dispute that the October 23, 2007 Preliminary Injunction is a lawful order of reasonable specificity. Based on the evidence before him, and in light of Defendant Becker's conduct in prompting APC's motion for sanctions, Judge Gettleman specifically ordered that Defendants were enjoined from soliciting APC's customers and known prospective customers, using APC's confidential information, and engaging in any kind of business relationship with Chinese supplier Zehua. Judge Gettleman reaffirmed the scope of that order when he denied Becker's motion to "limit" the Preliminary Injunction on November 29, 2007. (D.E. 122; *see also* Nov. 29, 2007 Tr. of Proceedings, attached as Ex. 3 to APC's Reply Memorandum in Support of Motion for Rule to Show Cause, D.E. 154-3.) As set forth in greater detail below, Defendants' activities are again in direct violation and contempt of this Court's order and authority.

1. **Defendants Are Directly Soliciting and Doing Business with APC Known Prospective Customer ProLink, Inc.**

There can be no dispute that, once again, Defendants have violated, and continue to violate, the Preliminary Injunction with apparently no regard for this Court's order or for the fact that both a motion for partial summary judgment and a motion for rule to show cause are pending before this Court. Despite the entry of the Preliminary Injunction, and after APC filed its first motion for rule to show cause, Defendants are nonetheless selling SourceOne's products to every category of APC customer expressly prohibited by the Preliminary Injunction by selling to ProLink.

As is by now familiar to the Court, APC is in the business of manufacturing and supplying vacuum cleaner filters and bags. Its customers include, among others, distributors and

4

master distributors of janitorial and sanitation ("jan/san") products. ProLink is a nationwide buying group owned by its more than 80 member distributors of jan/san products. (Kelly Aff. ¶ 5.) Buying groups work in cooperation with their member-distributors to gain better marketing and price advantages in the field. (Kelly Aff. ¶ 5.) ProLink sells exclusively to its member distributors. (*Id.*) Since at least May 2006, ProLink was a prospective customer of APC. (Kelly Aff., ¶¶ 5, 8.) On May 15, 2006, while Defendant Becker was APC's National Sales Manager, he made a note in APC's "ACT" customer contact database stating:

> **Pro Link is a buying group for distributors throughout the US. Similar to AmSan.** I will be contacting Doug in future. He just started with Pro Link. He is a friend of Tim Wind.

(Kelly Aff., ¶ 8; Kelly Aff. Ex. A) (emphasis added).[2]

On that same date, Becker changed ProLink's customer profile to reflect that it was a "Prospective Customer." (Kelly Aff. ¶ 9; Kelly Aff., Ex. A.)

It was also in May 2006 that Becker began exploring the possibility of doing business with APC's former Chinese supplier, Zehua, in direct competition with APC. (October 12, 2007 Memorandum Op. and Order at p. 11, D.E. 101.) As set forth in APC's Rule 56.1 Statement of Undisputed Facts, which was filed concurrently with APC's Motion for Partial Summary Judgment on October 2, 2007, Becker had begun contacting an individual in China in May 2006 for the purpose of becoming an exclusive agent of Zehua, APC's former Chinese supplier. (APC's Rule 56.1 Statement ¶¶ 57-59, D.E. 89.)

In fact, between May 15 and May 16, 2006, the same dates he identified ProLink as a "Prospective Customer" in APC's ACT database, Becker exchanged e-mails with a Zehua

---

[2] As the Court may recall, AmSan is another prospective customer of APC who, as Magistrate Judge Ashman (D.E. 101, 135) and Judge Gettleman conclusively found, Becker had improperly solicited on behalf of SourceOne while employed as APC's National Sales Manager.

contact regarding possible terms to an exclusive supply agreement with Zehua, asking her if Zehua would "no longer sell to APC." (APC Rule 56.1 Statement ¶ 59, D.E. 89.) Thus, on the same date he made the notation in APC's ACT customer contact database about the prospective customer "similar to AmSan," Becker communicated with the Chinese individual regarding his exclusive contract with Zehua. There is therefore no question that Becker knew that ProLink was a prospective customer of APC's at the time he was APC's National Sales Manager and that, like AmSan, Becker had begun planning to solicit ProLink on behalf of his new company, SourceOne, rather than APC. Accordingly, Becker is clearly enjoined from doing business with ProLink.

In early May 2008, after APC's first motion for rule to show cause was filed and fully briefed, APC discovered that ProLink is listing Green-Klean products on its website. (Kelly Aff. ¶ 10.) On ProLink's website, www.prolinkhq.com, ProLink lists several lines of Green-Klean bags through its product catalog, which is available at http://www.prolinkhq.com/documents/UnpricedProLinkCatalog.pdf. (True and correct copies of the relevant webpages from ProLink's website offering SourceOne's Green-Klean products for sale, of which the Court can and should take judicial notice, are attached hereto as Group Ex. 2.) *See Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (taking judicial notice of National Personnel Records Center's website, which "provided essential corroboration"); *Laborer's Pension Fund v. Blackmore Sewer Constr. Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of content of Harris Bank's website).

By going to ProLink's website and clicking on "Products," one is directed to a webpage listing several categories of products offered by ProLink. (Ex. 2-A.) If one clicks on the hyperlink to ProLink's printed catalog, he is directed to a webpage providing an alphabetical

listing of products offered. (Ex. 2-B.) By clicking on products ranging from "O-Z," one is further directed to a webpage offering "Vacuum Bags and Filters." (Ex. 2-C.) Clicking on the link to "Vacuum Bags and Filters," directs the user to a specific page identifying over 20 lines of SourceOne's Green-Klean bags as products available to its member distributors. (Ex. 2-D.) There is no question that Becker and SourceOne are selling Green-Klean bags to ProLink, in direct violation of the Preliminary Injunction, which expressly enjoins him from "[d]oing business with or soliciting, either directly or indirectly, any customers or known prospective customers of APC at the time Becker was employed by APC." (Preliminary Injunction at 3, D.E. 107.) Once again, Defendants are clearly violating the Preliminary Injunction, in blatant disregard for the Court's authority. They must be held in contempt of Court.

### 2. Defendants Are Also Soliciting and Doing Business with Other APC Customers in Further Violation of the Preliminary Injunction

Defendants are also violating the Preliminary Injunction by selling products, through ProLink, to current, former, or known prospective APC customers. By selling Green-Klean products to ProLink, whose member distributors include more than 30 current, former, and known prospective APC customers, Defendants are in clear violation of the Preliminary Injunction. (*See* Kelly Aff., Ex. 1, at ¶ 11; Ex. 1-B.)[3] Unlike Defendants' response to APC's first motion for rule to show cause, which complained about SourceOne's sales to large, middleman wholesalers like Re-Nu Equipment, Inc., Defendants cannot argue that they have no control over or knowledge of who ends up buying the Green-Klean products sold to ProLink. ProLink sells exclusively to its member distributors, who are plainly listed on its website under the "Distributor Locator" tab on its homepage. (A true and correct copy of the listing from

---

[3] Whether selling to ProLink constitutes direct sales to its member distributors who own ProLink or indirect sales to those member distributors makes no difference, since both are prohibited.

ProLink's website of its member distributors is attached hereto as Ex 2-E.) With one click, Becker could easily identify every one of APC's current, former, and known prospective customers who are also exclusive ProLink distributors.

Indeed, the list of ProLink distributors includes the names of at least 12 companies identified by Becker himself as prospective APC customers in the sales plans Becker prepared for APC in the fall of 2006. (*See* Sales Plans, Kelly Aff., Ex. 1-C.) As explained in APC's reply memorandum in support of its first motion for rule to show cause, during his last few months as APC's National Sales Manager, Becker traveled throughout the United States, purportedly on behalf of APC, and met with most of APC's manufacturer's representatives to report on the status of APC's sales in each region and determine a targeted sales plan going forward. (Reply at p. 4, D.E. 154.) Twelve of the targeted prospective customers Becker listed on these sales plans and submitted to APC as part of **APC's** targeted prospective sales plan are ProLink member distributors.[4] (Kelly Aff. ¶ 12; Ex. 1-C.)

Further, Defendants cannot be heard to say that their hands are tied because the Court's order was not narrowly tailored or because it would be unduly burdensome for him to locate and identify those customers he can or cannot sell to. First, as set forth above, Defendants' act of doing business with ProLink is itself a violation of the Preliminary Injunction. However, even if the Court were to find that Defendants were permitted to do business with ProLink on some limited basis, at minimum, Defendants are obligated to exercise reasonable diligence to alert ProLink and/or its individual member distributors who are current, former, or known prospective APC customers that SourceOne is prohibited by Court order from selling to those companies

---

[4] Exhibit B to the Kelly Affidavit is a list of the distributors identified on ProLink's website. Exhibit B indicates which of those distributors are current or prospective APC customers.

8

through the ProLink buying group or otherwise. *Anthony Marano Co. v. Stallone, Inc.*, No. 00 C 8019, 2002 WL 31875471, at *7 (N.D. Ill. Dec. 24, 2002) (noting that a defendant subject to a Court order is obligated to make every effort to be "reasonably diligent and energetic in attempting to accomplish what was ordered.")

Instead, Defendants have indiscriminately sold Green-Klean products to ProLink, with full knowledge that ProLink itself is a known prospective customer, that ProLink sells exclusively to its member distributors, and that ProLink's member distributors include more than 30 of APC's current or prospective customers. Far from being diligent, Defendants' activities have been in clear and willful disregard of the Preliminary Injunction. In fact, even when presented with an opportunity to explain the steps they have taken to abide by the Preliminary Injunction through their response to APC's first motion for rule to show cause, Defendants did not identify a single step taken to do so. Once again, Defendants are clearly violating the Preliminary Injunction by indirectly selling to known APC customers. They must be held in contempt of this Court's Order.[5]

## III. CONCLUSION

As set forth above and in APC's first Motion for Rule to Show Cause, Defendants are in violation of the Court's October 23, 2007 Preliminary Injunction. Defendants' activities are willful, and in direct contempt of this Court's authority and jurisdiction.

WHEREFORE, Plaintiff APC Filtration, Inc. respectfully requests that the Court:

A.    Find Defendants William A. Becker and SourceOne Plus, Inc. in civil contempt of the October 23, 2007 Preliminary Injunction;

---

[5]   APC's fully briefed motion for partial summary judgment seeks, among other things, the entry of a permanent injunction against Defendants. APC submits that Defendants' repeated disregard for the Preliminary Injunction provides strong additional support for granting a permanent injunction.

CHICAGO/#1784354.2

B.  Order an immediate accounting of all products sold by SourceOne since October 23, 2007, including production of purchase orders, accounts receivable, bank deposits and shipping and warehouse records;

C.  Order an immediate accounting of any products purchased from or received from Chinese supplier Zehua since October 23, 2007, including production of shipping and warehouse records;

D.  Fine Defendants in an amount appropriate to ensure future compliance with the October 23, 2007 Preliminary Injunction; and

E.  Award Plaintiff APC Filtration, Inc. such further and additional relief, including attorneys' fees and costs relating to preparation and filing of its motions for rule to show cause, as is just and appropriate.

Respectfully submitted,

PLAINTIFF APC FILTRATION, INC.

By:  /s/ Richard C. Bollow
One of Its Attorneys

Richard C. Bollow (No. 0248177)
Jeanah Park (No. 6278193)
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601-1003
Telephone: 312.609.7500
Facsimile: 312.609.5005

Date: May 16, 2008

10

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing **Plaintiff APC**

**Filtration, Inc.'s Second Motion for Rule to Show Cause** was served on:

Shannon McDonald
Carroll & McDonald LLC
2665 S. Moorland Road
Suite 200
New Berlin, WI 53151
262-641-0071

by using the CM/ECF system, which will send electronic notification of such filing to the above.

s/ Richard C. Bollow
Richard C. Bollow

11