# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

APC FILTRATION, INC.,     )
              )
 Plaintiff,        )
              )
 v.          )   CASE NO.:  07-CV-1462
              )
WILLIAM A. BECKER and    )   District Judge Robert M. Dow, Jr.
SOURCEONE PLUS, INC.,    )
              )
 Defendants.       )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants William A. Becker and SourceOne Plus, Inc's ("SourceOne") motion to reconsider [190] the Court's Memorandum Opinion and Order dated August 4, 2008, which granted Plaintiff's motion for partial summary judgment [87] and denied Defendants' motion for summary judgment [109] as to Counts III and VI.  For the following reasons, Defendants' motion to reconsider [190] is granted in part and denied in part.  Specifically, the motion is granted to the extent that, in this opinion, the Court refines (and narrows in some respects) the categories of information deemed to be trade secrets in the Court's August 4, 2008 opinion, and is denied in all other respects.

## I. Background

The facts in this case have been chronicled in the Court's Memorandum Opinion and Order of August 4, 2008, as well as by both Judge Gettleman and Judge Ashman in their prior orders.  However, the Court will recite them briefly here.  APC is a Canadian corporation incorporated in the province of Ontario.  APC's business is the engineering and manufacturing of filters and bags for various types of industrial, commercial, and domestic vacuum cleaners.  Defendant Becker was employed by APC from January 2002 until January 2007.  At the time his

employment with APC ended, Becker was APC's National Sales Manager. Becker is now President of SourceOne, an Illinois corporation that competes in the same product market as APC.

APC instituted this lawsuit on March 15, 2007. APC alleges that Becker used and continues to use proprietary information and contacts obtained during his employment with APC to enable his company, SourceOne, to compete with APC. APC seeks damages and injunctive relief, alleging that Becker's conduct constitutes a misappropriation of APC's trade secrets as well as a violation of Becker's employment contracts with APC. Of particular relevance are APC's allegations that Becker stole one of APC's supplier's, the Tongxiang Zehua Paper Company ("Zehua"); that he diverted a major potential client, AmSan, from APC to SourceOne; and that he competed with APC using propriety information such as customer and pricing data.

In the course of discovery, APC learned that Becker had destroyed a personal computer that contained some communications between Becker and another company that may have been relevant to APC's claims. Prior to the reassignment of this case, (i) Judge Gettleman found that Becker willfully destroyed relevant evidence after he had reasonable notice that the contents of his computer could become the subject of discovery requests and entered a temporary restraining order [17] and a preliminary injunction [107] against Source One and Becker; (ii) Magistrate Judge Ashman issued orders [101, 135] imposing sanctions in the amount of almost $100,000 against both Defendants; and (iii) both judges expressed their dismay over Becker's conduct during the course of this litigation. Judge Gettleman concluded that Becker "purposefully destroyed evidence in this case and continually lied about it." 10/23/07 Trans. at 10-11. Magistrate Judge Ashman found that Becker "willfully destroyed relevant evidence," "violated

the Court's June 28, 2007 discovery order," and "acted in bad faith to prevent APC from discovering damaging evidence." 12/21/07 Order [135] at 2 (summarizing 10/12/07 Order).

On August 4, 2008, the Court entered summary judgment in favor of Plaintiff on Counts III (breach of fiduciary duty) and VI (violation of the Illinois Trade Secrets Act). The Court concluded that "Becker crossed the line by competing with APC for customers and suppliers while still employed by APC and by using APC's customer and price lists to give himself an advantage." The Court entered partial summary judgment with respect to monetary damages in the amount of $174,195.92 to reimburse APC for the compensation, expenses, and severance package paid to Becker while he was in breach of his fiduciary duty. The Court also advised the parties that it was prepared to grant relief with respect to Counts III and VI in the form of a permanent injunction with respect to Becker's and SourceOne's solicitation of APC's current customers and use of APC's suppliers. The Court requested that Plaintiff submit to the Court and serve on counsel for Defendants a draft proposed permanent injunction order, consistent with the law of Illinois and reasonable in scope and duration on or before August 18, 2008. Defendants were given ten days from the date on which they received the proposed order to submit to the Court and to Plaintiff's counsel any objections that they had to the proposed order. The Court also recognized that Defendants' motion for summary judgment as to Counts I, II, IV, and V remained pending, as did APC's motions for rule to show cause why Defendants should not be held in contempt for violating the preliminary injunction. In response to the Court's inquiry, APC advised that it no longer wished to pursue the remaining counts in its complaint, but did wish to further pursue its request for a contempt hearing on Defendants' alleged violations of the preliminary injunction.[1]

---

[1] The motions for rule to show cause have been referred to Magistrate Judge Ashman, who has scheduled them for hearing on January 29, 2009.

**II.     Discussion**

**A.     Standard for a Motion to Reconsider**

A court may alter or amend a judgment under Federal Rule of Procedure 59(e) when the movant "clearly establish[es]" that "there is newly discovered evidence or there has been a manifest error of law or fact." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006). While Rule 59(e) allows a movant to bring to a court's attention a manifest error of law, it "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Here, that judgment was entered on summary judgment, which the Seventh Circuit has stressed is "not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Calle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005). Once that moment has passed, a district court is "not required to give [Defendants] a 'do over'" (*Winters*, 498 F.3d at 743), simply because Defendants have obtained new counsel.

**B.     Lack of Capacity to Sue**

In their opening brief in support of their motion for reconsideration, Defendants argued that APC lacks "the authority to maintain this lawsuit" because it failed to register to transact business in Illinois pursuant to Article 13 of the Illinois Business Corporation Act ("IBCA").[2] In their reply brief, Defendants added another, related argument, contending that APC has not paid

---

[2] Defendants initially argued that the Court lacked jurisdiction over the case on account of APC's failure to register. However, in their reply brief, Defendants acknowledge that the argument was "mis-cast" as jurisdictional in nature and have now "re-styled" the argument as one that APC lacks capacity to maintain this action.

"requisite franchise taxes associated" with the IBCA's registration requirement for foreign corporations and, therefore, "lacks the authority to maintain this lawsuit." Defendants submit that the argument that Plaintiff lacks capacity to sue because it failed to pay Illinois franchise fees cannot be waived and, therefore, despite the extensive proceedings and rulings to date, this suit must be dismissed. Plaintiffs contend that Defendants' capacity arguments are based on a fundamental misreading of the law and that Defendants can, and have, waived this argument.

Section 13.70 of the IBCA states that "[n]o foreign corporation transacting business in this State without authority to do so is permitted to maintain a civil action in any court of this State, until the corporation obtains that authority." 805 ILCS 5/13.70. Section 15.65 of IBCA, which Defendants cite in support of their "franchise tax" argument, appears to incorporate Section 13.70. Section 15.65 states that any franchise fees payable under this section are necessary to a foreign corporation's "privilege of exercising its authority to transact such business in this State as set out in its application therefore." 805 ILCS 5/15.65. Thus, the franchise fee requirement appears to work in tandem with the requirement that a foreign corporation obtain a certificate of authority. In any event, both arguments, whether made pursuant to Section 13.70 or Section 15.65, pertain to APC's capacity to sue (or lack thereof).

The threshold question, then, is whether these arguments can be waived. In *Wagner Furniture Interiors, Inc. v. Kemner's Georgetown Manor, Inc.*, the Seventh Circuit addressed the question of whether a plaintiff lacked capacity to sue because it had not obtained a certificate of authority to maintain a civil action pursuant to Section 13.70 of the Act. 929 F.2d 343, 345 (7th Cir. 1991). In *Wagner*, defendants answered plaintiff's complaint and the parties engaged in substantial pre-trial discovery over two years. *Id*. at 344-45. As is the case here, jurisdiction was based on diversity of citizenship. See 28 U.S.C. § 1332. *Id*. at 344. After the trial date was set,

5

defendants filed a motion to dismiss for want of jurisdiction under Section 13.70 of the IBCA, arguing (as Defendants here have argued) that the court lacked jurisdiction because plaintiff was a foreign corporation not licensed to do business in Illinois. *Id*. at 345.

The Seventh Circuit rejected the notion that defendants' argument under the IBCA should be viewed as a motion to dismiss based on lack of jurisdiction. *Wagner*, 929 F.2d at 345. Instead, the court of appeals explained that "the motion was actually based on plaintiff's alleged lack of capacity to sue since it had not obtained a certificate of authority to maintain a civil action under the [IBCA] * * *." *Id*. Applying what Defendants here acknowledge to be the rule that "[f]ederal courts exercising diversity jurisdiction must apply * * * federal law to procedural issues" ([201] Def. Reply at 9), the Seventh Circuit turned to "Rule 9(a) of the Federal Rules of Civil Procedure governing capacity of a party to be sued." *Wagner*, 929 F.2d at 345. As the court noted, under Rule 9(a), when a party wishes to raise lack of capacity to sue, it must do so by "*specific negative averment*." *Id*. (emphasis in original); see also Fed. R. Civ. P. 9(a) (stating that when a party wishes to raise the issue of capacity or authority to sue, it "must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge"). The Seventh Circuit went on to clarify what is meant by "specific negative averment," finding that "a party must raise lack of capacity to sue in an *appropriate* pleading or amendment *to avoid waiver*." *Id*. (emphasis added); see also *Swaim v. Moltan Co*., 73 F.3d 711, 718 (7th Cir. 1996) ("Like questions pertaining to personal jurisdiction, those involving capacity must therefore be identified in either a responsive pleading or motion"); *MTO Maritime Transp. Overseas v. McLendon Forwarding Co*., 837 F.2d 215, 218 (5th Cir. 1988) (recognizing that "[i]t is settled law that failure specifically to plead capacity waives the right to object"). It therefore is

clear as a matter of controlling federal law, as set forth by the Seventh Circuit, that lack of capacity defenses are subject to waiver.

The Seventh Circuit went on to observe that "Illinois law takes the same view towards a defendant's failure to object specifically to defects in capacity." *Wagner*, 929 F.2d at 346; see also 18 Fletcher Cyc. Corp. § 8628 ("Although there is authority to the contrary, the defense that a foreign corporation is doing business in the state without qualifying usually is waived unless it is pleaded by the defendant at an early stage of the proceedings, unless some valid legal excuse is presented") (citing, *inter alia*, *Cox v. Doctor's Associates, Inc.*, 613 N.E.2d 1306 (Ill. App. 5th Dist. 1993), and *Amerco Field Office v. Onoforio*, 317 N.E.2d 596 (Ill. App. 2d Dist. 1974), in support of the majority rule). In *Amerco Field Office*, the Appellate Court held that (i) a foreign corporation did not need to obtain a certificate of authority in order for the state courts to acquire jurisdiction and (ii) the failure to obtain a certificate (if required by state law) is a defense that would be considered "waived" unless raised by the defendant "at the earliest opportunity."[3] 317 N.E.2d at 600; see also *Cox v. Doctor's Associates, Inc.*, 613 N.E.2d 1306, 1313 (5th Dist. 1993) (holding that "[t]o the extent that the trial court ruled that plaintiff waived its position by not raising it until 14 months after the counterclaims were filed, and over one week after trial had begun, we cannot conclude that such a ruling was an abuse of discretion").[4]

---

[3] In *Amerco*, defendant raised its capacity to sue argument five months after being served and four months after default judgment had been entered, and the court found that defendant had waived the argument.

[4] Defendants cite two Illinois Appellate Court decisions in which the courts have opined that private civil defendants may not waive lack of capacity defenses based on a party's failure to pay franchise taxes or a corporation's administrative dissolution by the Illinois Secretary of State. See *Henderson-Smith & Associates, Inc. v. Nahamani Family Service Center, Inc.*, 752 N.E.2d 33, 37 (1st Dist. 2001); *Elsberry Equip. Co. v. Short*, 211 N.E.2d 463, 471 (4th Dist. 1965). Those cases indicate that Illinois law lacks uniformity on the issue. However, consistent with the Seventh Circuit's analysis in *Wagner* and the analysis in the other federal court of appeals cases cited by Defendants (see p. 8, *infra*), the Court concludes that as a matter of federal procedural law, lack of capacity can be waived under Rule 9(a). In any event, to the extent that state law is pertinent to the analysis, in the absence of an Illinois Supreme

In the present case, Defendants did not raise their lack of capacity argument in a "specific negative averment" or in a timely amended pleading as required by Rule 9(a) and *Wagner*. In their amended answer and affirmative defenses [60], filed on June 15, 2007, Defendants raised five affirmative defenses – none of which included a specific negative averment that APC lacked the capacity to sue. Nor, by any stretch of the imagination, can Defendants be said to have raised this defense "at the earliest opportunity."[5] This case has been pending for almost two years. Since APC filed its complaint on March 15, 2007, Defendants have responded to APC's motion for a temporary restraining order, answered the complaint, engaged in written and oral expedited discovery, participated in the preliminary injunction hearing, moved to "limit" the preliminary injunction entered by the Court, been sanctioned by the Court for destroying evidence and lying under oath, moved for reconsideration of the Court's order entering sanctions, responded to APC's motion for partial summary judgment, and filed their own motion for summary judgment on all counts of the complaint. Moreover, the Court entered summary judgment in favor of APC on its motion for partial summary judgment and APC has given notice to the Court and to Defendants that it does not wish to pursue any of the other counts of its complaint.[6] Thus, at the time that Defendants raised for the first time the various lack of capacity arguments, all that

Court decision on point, the split of authority in the Illinois Appellate Courts is an insufficient basis for this Court to disregard the Seventh Circuit's view that "Illinois law takes the same view [as federal law] towards a defendant's failure to object specifically to defects in capacity" in a timely fashion. *Wagner*, 929 F.2d at 346.

[5] As APC has observed [216, at 5 n.3], it cannot be assumed that Defendants' prior counsel was unaware of the lack of capacity issue and simply decided not to raise it for strategic reasons – for example, because he felt that (i) this was a reasonable forum in which to litigate, (ii) APC had a viable defense, and/or (iii) APC easily could have cured any capacity problem if Defendants raised it.

[6] As noted above, APC did not move for summary judgment on its claims for breach of contract, tortious interference with contractual relations or tortious interference with prospective economic advantage. In response to the Court's inquiry, APC, through counsel, has advised that it does not intend to pursue those claims and will move to dismiss them after the Court enters the contemplated permanent injunction.

remained before final adjudication on the merits of this case was the entry of the contemplated permanent injunction, which the Court already had begun crafting.

Based on the progress of the case and the fact that the primary issues already have been resolved on summary judgment, Defendants plainly have not raised their lack of capacity argument in a timely manner. While the Court agrees with the federal court of appeals cases cited by Defendants suggesting that a lack of capacity argument need not be raised in a party's "initial answers to the complaint" (*Gardner by Gardner v. Parson*, 874 F.2d 131, 139 n.12 (3d Cir. 1989)) and that there may not be a bright line establishing precisely "when failure to raise the issue of capacity is deemed waived" (*Pike County Citizens United for Justice v. Oxy USA, Inc.*, 183 F.3d 918, at *4 (6th Cir. 1999) (unpublished)), there is nothing in those cases that is contrary to the Seventh Circuit's view that the issue of capacity can be waived or that the issue is waived if it is not raised until a case is long in the tooth and nearing trial or final disposition. Indeed, this case is closely akin to *Wagner*, *Amerco*, and *Cox* in terms of progress toward finality. Far from raising the lack of capacity issues "at the earliest possible opportunity," it might be said that Defendants have raised them at the "last possible opportunity."

Finally, Defendants' contention that any waiver should be excused on the ground that Defendants "had no facts peculiarly within their knowledge * * * because APC kept its unregistered status to itself" is contradicted by their first argument, in which they admit that "public records" serve as the basis for their contention that Plaintiff has neither filed for nor received a Certificate of Authority and has not paid its franchise taxes. See Reply at 2. These public records were available for prior counsel's review. Defendants' failure to research and

present to the Court in a timely manner the issues relating to APC's alleged lack of capacity to sue cannot excuse the waiver in the circumstances of this case.[7]

### C.      Illinois Trade Secrets Act

Defendants also urge the Court to reconsider its ruling in favor of Plaintiff on its claim that Defendants violated the Illinois Trade Secrets Act ("ITSA"). Defendants argue that Plaintiff failed to come forward with proof of essential elements of its trade secrets claim and therefore that summary judgment should have been denied. Specifically, Defendants' new counsel argues that (1) APC failed to offer "proof" that the information over which it sought protection under the ITSA (seven categories) constituted trade secrets, and (2) APC's proprietary information is not a trade secret because it is readily and publicly available. Plaintiff counters that Defendants have not identified any new facts that have arisen or changes in the law since August 2008, when the Court issued its opinion. Rather, Plaintiff submits that the only change is that Defendants have obtained new counsel, who now seek to present arguments to the Court that they believe were not adequately presented the first time around.

As set forth above, "a motion to reconsider should be * * * rare," and should be used principally to correct serious errors of law or to present newly discovered evidence. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Defendants must clearly establish that "there is newly discovered evidence or there has been a manifest error of law or fact." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006). Rule 59(e) does not afford Defendants the opportunity to undo procedural failures, "and it certainly does not allow [them] to introduce new evidence or advance arguments that could and should have been

---

[7] Because the Court concludes that Defendants have waived their arguments based on lack of capacity to sue, the Court need not address APC's alternative contention that it was not required to register or pay franchise taxes because it does not transact business in Illinois within the meaning of the IBCA.

presented to the district court prior to the judgment." *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000).

As set forth in the Court's opinion of August 4, 2008, in order to prevail on a claim under the ITSA, APC needed to establish that the information at issue was (i) a trade secret, (ii) that Becker misappropriated the information, and (iii) that he used it in his business. See *Strata Marketing, Inc. v. Murphy,* 740 N.E.2d 1166, 1176 (Ill. App. Ct. 1st Dist. 2000). Under Section 2(d) of the Act (765 ILCS 1065/2(d)), a trade secret is defined as follows:

> [I]nformation, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

In determining whether a trade secret exists, Illinois courts also have looked to the following common law factors: (i) the extent to which the information is known outside of the employer's business; (ii) the extent to which it is known by employees and others involved in the business; (iii) the extent of measures taken by the employer to guard the secrecy of the information; (iv) the value of the information to the employer and to his or her competitors; (v) the amount of effort or money expended by the employer in developing the information; and (vi) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Delta Medical Systems v. Mid-America Medical Systems, Inc.*, 772 N.E.2d 768, 780 (Ill. App. Ct. 1st Dist. 2002); see also *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003).

As indicated in the Court's prior opinion, the protection afforded trade secrets reflects a balancing of conflicting social and economic interests. Where an employer has invested

substantial time, money, and effort to obtain a secret advantage, the secret should be protected from an employee who obtains it through improper means. See *ILG Industries, Inc. v. Scott*, 273 N.E.2d 393, 396 (Ill. 1971). "It is generally recognized in Illinois that at the termination of employment, an employee may not take with him confidential, particularized plans or processes developed by his employer and disclosed to him while the employer-employee relationship existed, which are unknown to others in the industry and which give the employer an advantage over his competitors." *AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1202 (7th Cir. 1987). Nevertheless, in a competitive market, an employee must be entitled to utilize the general knowledge and skills acquired through experience in pursuing his chosen occupation. See *Service Centers of Chicago, Inc. v. Minogue,* 535 N.E.2d 1132, 1135 (Ill. App. Ct. 1st Dist. 1989).

Defendants argue that Plaintiff has failed to offer the requisite "proof" of its trade secrets. However, a motion for reconsideration is not the proper time to attempt to create questions of fact. See *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996) (noting that Defendants' attempt to show a genuine issue of material fact through a motion to reconsider was "too little, too late"). While Defendants make an effort in their motion to reconsider to pick apart the seven categories of trade secrets claimed by Plaintiffs, their energy should have been expended during the briefing on the summary judgment motions. See *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (quoting *Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999); see also *AA Sales & Asso., Inc., v. Coni-Seal, Inc.*, 550 F.3d 605, 612-13 (7th Cir. 2008).

The first time around, Defendants failed to refute the evidence presented by Plaintiff with their own evidence and supporting law which would counter Plaintiff's contention that the seven

categories constituted trade secrets. Instead, Defendants argued that the information contained in the seven categories did not constitute trade secrets because the information was not sufficiently secret to give APC a competitive advantage and that Becker was entitled to the information in any event because he contributed to or was responsible for developing the information and APC failed to take adequate measures to protect it. However, at summary judgment, APC presented evidence outlining the steps that it took to protect its confidential information and detailing Becker's conduct in soliciting both customers and a supplier of APC while still employed by APC.[8] Based on the evidence presented by Plaintiff and not contested by Defendants, it was clear to the Court then – and remains clear today – that Becker was aware of his obligations to maintain the confidentiality of certain categories of APC's business information. In addition, as the Court noted in its decision, APC's confidential information was entitled to protection under the ITSA regardless of whether an enforceable non-disclosure agreement existed. See *Mangren Research & Dev. Corp. v. Nat'l Chem. Co., Inc.*, 87 F.3d 937, 943 (7th Cir. 1996) (holding that confidential information qualified as trade secrets where there was no confidentiality agreement with former employee defendants, where plaintiff made efforts to protect the secrecy of its trade secrets by, for example, advising employees of confidential nature of trade secrets, requiring other employees to sign confidentiality agreements, and testifying that it required defendant to sign confidentiality agreement); *Dulisse v. Park Int'l Corp.*, 1998 WL 25258, at *3 (N.D. Ill. Jan. 9, 1998) (holding that information qualified as trade secret under the ITSA where, though plaintiff did not have written non-disclosure agreement with defendant, it kept customer and

---

[8]  APC stored all of this information in its "ACT" database (which it refers to as a customer contact management system) as well as on its computer network. The evidence showed that, apart from the Kellys, Becker was the only APC employee who possessed a password that would give him immediate access to APC's computer databases. The Court also determined that Becker used APC's customer lists and pricing data to compete with APC and that he began doing so while still working for APC.

price lists segregated in locked room, and required employees – including defendant – to acknowledge confidentiality policy).

Nevertheless, after further review of the August 4 opinion and the applicable case law, the Court concludes that the seven categories identified in that opinion are overly broad in a few respects and should be refined. In the August 4 opinion, the Court found that Becker misappropriated the following information: (1) names and addresses of all customers and potential customers and contact persons; (2) historical sales information, including customer product preferences; (3) details of pending sales quotations; (4) year-to-date sales figures; (5) product information including customer part numbers; (6) shipping, pricing, cost, and profit margin information for each of APC's product lines; and (7) supplier names, addresses, and contact information. Under Illinois law, the critical question is whether those categories of information constitute "confidential, particularized plans or processes developed by his employer and disclosed to him while the employer-employee relationship existed, which are unknown to others in the industry and which give the employer an advantage over his competitors," such that Becker should not have taken them with him when he left APC to establish a rival firm. *AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1202 (7th Cir. 1987).

After reviewing the previous opinion and the applicable law, the Court determines that Becker misappropriated the following categories of trade secret information: (1) names and addresses of contact persons of customers, potential customers, and suppliers identified by Becker and other APC employees while Becker was employed as APC's national sales manager; (2) customer-specific information, such as product preferences and deviated pricing; (3) details of pending sales quotations; and (4) cost and profit margin information for each of APC's product lines. The value of these categories of information to APC, as well as its competitors or

potential competitors, is obvious and well recognized. See, *e.g.*, *Gillis Assoc. Indus., Inc. v. Cari-All, Inc.*, 564 N.E.2d 881, 885 (Ill. App. 1st Dist. 1990) (customer list is the type of information that the ITSA is intended to protect); *Roton Barrier, Inc. v. Stanley Works*, 79 F.3d 1112, 1117 (Fed. Cir. 1996) (sales data and marketing analysis qualify as trade secrets under ITSA). As the Court indicated in its prior opinion, obtaining customers through quality products and competitive pricing is the bedrock of most sales industries. According to the evidence submitted by APC at summary judgment, *and not disputed by Becker*, APC (with the help of Becker as its employee) worked for more than twelve years to develop its customer lists and pricing information. APC created its pricing schemes by obtaining and developing pricing information from salesmen, competitors, through research, and from attending trade shows. Some of APC's price lists, called "deviated" price lists, were tailored to specific customers, based on their needs and their relationships with APC, and were only available on APC's password-protected computer server and network. Sales data was created based upon years of industry knowledge and experience provided by APC staff (including Becker, while he worked for APC). While a competitor could do the same research to identify companies engaged in the Jan-San market, none of the particularized information – for example, contact persons, product preferences, and deviated pricing – could be duplicated without the considerable time, effort, and expense invested by APC. Thus, even if Becker did help build APC's customer lists and develop APC's pricing schemes, that was part of his job as National Sales Manager and that information was developed for APC and belonged to APC, not Becker.

The Court notes that the tailoring of the categories of information that the Court finds to constitute trade secrets in this opinion on reconsideration in no way disturbs the monetary damages in the amount of $174,195.92 that were assessed on the breach of fiduciary duty claim

to reimburse APC for the compensation, expenses, and severance package paid to Becker while he was in breach of his fiduciary duty. Rather, the refinements of the categories of trade secret information will be used by the Court to determine the scope and duration of a fair and appropriate permanent injunction.

## III. Conclusion

For these reasons, Defendants' motion to reconsider [190] is granted in part and denied in part. Specifically, the motion is granted to the extent that, in this opinion, the Court refines (and narrows in some respects) the categories of information deemed to be trade secrets in the Court's August 4, 2008 opinion, and is denied in all other respects.

Dated: January 26, 2009                    _____
                                           Robert M. Dow, Jr.
                                           United States District Judge