# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| APC FILTRATION, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 07-CV-1462 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| WILLIAM A. BECKER and ) | |
| SOURCEONE PLUS, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This matter has been before the Court on several prior occasions. Among the prior orders entered by the Court are (1) an October 2007 order by Magistrate Judge Ashman imposing sanctions on Defendants [101], (2) an October 2007 preliminary injunction order entered by Judge Gettleman [107], (3) an August 2008 memorandum opinion and order granting Plaintiff's motion for partial summary judgment [167], and (4) an April 2009 permanent injunction order [235]. By its terms, the permanent injunction enjoined Defendants from doing business with or soliciting, either directly or indirectly, several categories of active and prospective customers and from doing business with or entering into exclusive supplier arrangements with certain suppliers for specified periods of time.

On July 15, 2010, Plaintiff brought a motion for rule to show cause [242] why Defendants should not be held in contempt for alleged violations of the permanent injunction order. In the motion and associated briefing, Plaintiff contends that it has identified no fewer than twenty-two violations of the injunction – both in regard to improper sales and improper solicitations of sales by Defendants and their agents and employees.

Defendants admit to most, if not all, of the alleged violations, and do not specifically deny or refute any of them. Defendants contend, however, that the violations were not willful. Although they concede that they are not "wholly without fault," Defendants submit that (1) they made "tremendous efforts" to comply with the injunction; (2) they believed that "protocols" had been put in place to ensure compliance; and (3) the "few isolated instances of contact [with prohibited former and prospective customers] occurred due to the complexities of the requirements of the list and due to human error." [See 248, at 1-4.] Defendants stress that they "are not excusing their isolated missteps (they have offered to disgorge any profits realized on those sales)," and insist that "those infractions were, quite simply, not committed with the intent to defy this Court or its Order." [*Id*. at 5.]

As Plaintiff notes, and Defendants do not contest, the Court may issue a civil contempt order against a party that has failed to comply with an injunction. See, *e.g.*, *Maness v. Myers*, 419 U.S. 449, 458 (1975); *S.E.C. v. Simpson*, 885 F.2d 390, 394 (7th Cir. 1989). The purposes of a civil contempt order are two-fold: (1) to coerce compliance with the underlying injunction and/or (2) to compensate that complaining party for loss as a result of the disobedience. *Blocksom & Co. v. Marshall*, 582 F.2d 1122, 1124 (7th Cir. 1978). The violation need not have been willful. See, *e.g.*, *Goluba v. School Dist. of Ripon*, 45 F.3d 1035, 1037 (7th Cir. 1995). It is enough that the party has not been "reasonably diligent and energetic in attempting to accomplish what was ordered." *Id*. When considering an appropriate sanction for a party in contempt, the guiding principle is proportionality. See, *e.g.*, *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1382 (7th Cir. 1993). Thus, the more serious the affront or transgression, the more serious the sanction should be.

Applying those standards to the circumstances set forth in the motion, response, and reply, the Court concludes that a finding of contempt is appropriate in view of Defendants' actions. With all due respect to Defendants, there simply are too many violations to conclude that Defendants engaged in reasonable diligence and/or acted energetically in attempting to comply with the permanent injunction. The violations – twenty-two in all – touch on virtually every aspect of the injunction, implicate each of the three lists attached to the injunction, and apparently went undetected until Plaintiff brought this motion. Indeed, many additional violations were uncovered by the limited discovery that was undertaken after the filing of the motion. In addition, there were multiple sales to some of the restricted companies.

Defendants' explanations for the admitted transgressions are unpersuasive. Any suggestion that the injunction order was overly complex and that compliance would have entailed complex procedures cannot be given credence. In reality, the injunction was carefully crafted and spoon-fed Defendants the names of the companies on the restricted lists for sales and solicitation. A reasonably careful side-by-side comparison of proposed invoices with the three lists should have sufficed to ensure compliance with the injunction. If there were any questions at the margins, it was incumbent on Defendants to return to the Court for clarification. Defendants' references to "protocols" intended to monitor compliance is unconvincing, especially in light of the lack of detail in regard to precisely what those protocols were and how they were implemented. Similarly unavailing are Defendants' efforts to pin some measure of the blame on employees and part-time employees. It is (and always has been) Defendants' – and, in particular, Mr. Becker's – obligation to comply with the injunction. To the extent that he employs subordinates to assist in the company's endeavors, it is (and was) incumbent upon Mr. Becker to personally ensure that those subordinates are aware of the injunction and what is

necessary to ensure compliance with it.  The bottom line here is that, at best, Defendants' efforts to comply with the injunction were seriously lacking, whether or not they were intentional.

A few examples of the laxity of Defendants' efforts will suffice.  At a minimum, the violations as to Matera, Industrial Cleaning Supply, and Acme Janitor and Chemical could have been avoided through a reasonably diligent comparison of nothing more than the invoices in Defendants' own records against the lists annexed to the permanent injunction order.  To the extent that Defendants were misled into making sales to those companies, the mistakes resulted either from sloppy bookkeeping or lax efforts to comply with the Court's order, for even minimal scrutiny of the relevant documents should have revealed the violation.  Further evidence of the relative ease with which the injunction could have been honored is the ability of Plaintiff to identify numerous additional violations by piecing together documents from Defendants' files.

As noted above, the Court need not conclude that the violations were willful to issue a contempt order.  In the interest of completeness, while the Court concludes that the characterization of Defendants' efforts to comply with the injunction as "tremendous" overstates those efforts considerably, the record does show that Mr. Becker did not entirely default on his obligations to obey the Court's order and did, in fact, take some affirmative steps to advise customers and potential customers of the restrictions on his company's ability to do business with them as a result of the injunction.  But even if Mr. Becker's efforts are enough to tip the scales against a finding that Defendants willfully engaged in a "grand scheme to circumvent the PI" [248, at 7], they fall far short of the mark under the standard of reasonable diligence and energy that a person or entity operating under a court-ordered injunction must exhibit.  See *Goluba*, 45 F.3d at 1037.

Having found Defendants in contempt, the Court now turns to the matter of an appropriate sanction. Again, as noted above and in the Court's prior orders, proportionality is the touchstone. To begin with, Defendants have offered to disgorge their profits from the sales that violated the injunction order. The Court agrees that disgorgement should be a component of a proper remedy in this instance. The Court also concludes that the frequency of the violations, both in regard to sales and solicitations, justifies an extension of the permanent injunction as to each category of customers on the lists appended to the injunction, to the extent that the prior restrictions had not expired prior to the date on which Plaintiff first brought its motion for rule to show cause.[1] Rather than extending the injunction in a staggered fashion, the Court extends the injunction as to paragraphs 1, 2, and 3 of the April 2009 permanent injunction for nine months from today's date – that is, until August 31, 2011.[2]

In addition, to assist Defendants in complying with the injunction (and in the interest of forestalling further violations), Defendants must file with the Court at three month intervals – that is, on March 31, June 30, and September 30, 2011 – a certification that they have carefully compared their sales and solicitation records for the three prior months against the terms of the injunction that still apply.[3] See *Connolly v. J.T. Ventures*, 851 F.2d 930, 933 (7th Cir. 1988) ("A court has broad discretion to fashion a remedy based on the nature of the harm and the probable effect of alternative sanctions."); see also *Weidner v. Carroll*, 2010 WL 310310, at *4 (S.D. Ill.

---

[1] The Court declines to extend the injunction as to paragraphs 4 and 6 because the restrictions in those paragraphs had expired as of January 31, 2010 – several months prior to the filing of Plaintiff's show cause motion. The Court also declines to extend the injunction as to paragraph 7 because none of the violations pertains to supplier arrangements.

[2] The Court's determination that, absent future violations, the injunction should terminate on a uniform date relates to the certification procedure set forth below.

[3] For example, on March 31, 2011, Defendants are to compare their sales and solicitation records for December 2010, January 2011, and February 2011 against the lists in Exhibits A, B, and C to measure compliance with paragraphs 1, 2, and 3 of the April 2009 permanent injunction order.

Jan. 21, 2010) (orderings defendants to file with the court every three months, for a period of two years, documentation that details the manner in which defendants have complied with the court's order); *F.T.C. v. Trudeau*, 708 F. Supp. 2d 711, 722 (N.D. Ill. 2010) (extending for a period of ten years the court's previous order mandating extensive reporting requirements and other compliance activities). To the extent that Defendants have not identified any violations, they may so state. To the extent that Defendants identify any violations, they must report them. The certification procedure has two purposes: First, it will (or at least should) compel Defendants to put in place a rigorous protocol that all employees will understand and follow in the exercise of the diligence and energy required of persons and entities obligated to obey injunction orders. Second, it will give the parties and the Court benchmarks against which to measure compliance. While Defendants should aim for perfection, a showing of reasonable diligence and energy will suffice to avoid any further contempt motions or sanctions and any additional extensions of the injunction order.

Finally, it is well established that a court may award attorneys' fees and costs in connection with a contempt proceeding. See, *e.g.*, *Tranzact Techs., Inc. v. ISource Worldsite*, 406 F.3d 851, 855-56 (7th Cir. 2005); *Brown & Brown, Inc. v. Ali*, 592 F. Supp. 2d 1009, 1050-51 (N.D. Ill. 2009); *Am. Family Mut. Ins. Co. v. Roth*, 2008 WL 168693, at *6-*7 (N.D. Ill. Jan. 15, 2008). Here, in view of Defendants' lax efforts to comply with the Court's injunction and the considerable resources that Plaintiff was forced to expend in bringing to light the violations identified in the initial motion for rule to show cause and exposing additional violations in discovery undertaken after the filing of that motion, the Court finds it appropriate to impose on Defendants an obligation to reimburse Plaintiff for the attorneys' fees and costs that it incurred in bringing and prosecuting the motion.

**III.    Conclusion**

For the reasons stated above, Plaintiff's motion for rule to show cause [242] is granted. The Court enters a finding of civil contempt against Defendants, and orders the following sanctions and other relief:

- Defendants must disgorge their profits from the sales that violated the injunction order;

- The permanent injunction entered on April 8, 2009, is extended as to paragraphs 1, 2, and 3 until August 31, 2011;

- Defendants must file with the Court on March 31, June 30, and September 30, 2011, a certification (as described above) indicting that they have carefully compared their sales and solicitation records for the three prior months against the terms of the injunction that still apply and reporting the results of their self-audit;

- Defendants must reimburse Plaintiff for the attorneys' fees and costs that Plaintiff incurred in bringing and prosecuting the motion.

Dated: November 30, 2010      _____
                              Robert M. Dow, Jr.
                              United States District Judge